## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**BLX GROUP, INC.,**

Alleged Debtor.

Case No.  **09-61893-11**

## *MEMORANDUM of DECISION*

At Butte in said District this 15ᵗʰ day of October, 2009.

In this involuntary proceeding, on shortened notice, a hearing was held October 2, 8 and 9, 2009, in Butte on: (1) the Emergency Motion for Appointment of Trustee filed September 22, 2009, at docket entry no. 6, by petitioning creditor Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust ("YCLT"), together with the responses thereto filed by CIP Yellowstone Lending LLC ("CIP") on September 29, 2009, and Palm Desert National Bank on September 30, 2009; (2) CIP's Emergency Motion to Modify Automatic Stay, pursuant to 11 U.S.C. §§ 362(d)(1) and (2), Fed. R. Bankr. P. 4001 and 9014, and Mont. LBR 4001-1 to Foreclose on Collateral filed September 25, 2009, at docket entry no. 16, together with the objections thereto filed by YCLT, Palm Desert National Bank, Stephan Baden, Jon Peddie and Timothy L. Blixseth ("Blixseth"); (3) Blixseth's Expedited Motion to Dismiss Involuntary Petition for Lack of Subject Matter Jurisdiction or, alternatively, to Transfer Venue to Central District of California filed September 30, 2009, at docket entry no. 51, together with YCLT's objection thereto; (4) the Emergency Motion of Yellowstone Club Liquidating Trust for Leave to File Adversary Proceeding filed October 5, 2009, at docket entry no. 94, together with CIP's

1

objection thereto; and (5) the YCLT's Emergency Motion for Rule 2004 Examinations filed September 29, 2009, together with CIP's objection thereto.  YCLT and its Trustee, Marc S. Kirschner, were represented at the hearing by attorney Shane P. Coleman of Billings, Montana; CIP was represented at the hearing by Paul D. Moore, Barry D. Green, and Kevin J. Renna of Boston, Massachusetts, Michael R. Lastowski of Wilmington, Delaware and Benjamin P. Hursh of Missoula, Montana; Palm Desert National Bank was represented by David J. Dietrich of Billings, Montana; Blixseth was represented by Philip H. Stillman of Olivenhain, California and Daniel D. Manson of Butte, Montana; and Mark E. Noennig of Billings, Montana appeared on behalf of First Bank.  Richard J. Samson, Samuel Byrne, Steven Smith, Karen Moller, Debbie Duneman, Raymond Dozier, Marc S. Kirschner and Chris Charnas testified.  YCLT's Exhibits 1 through 13, YCLT's Exhibits 16-21, CIP's Exhibits A, B, C, D, G, I, J, K, L and M, and Blixseth's Exhibit 100 were admitted into evidence.

This Memorandum of Decision memorializes the Court's oral ruling made October 9, 2009, on Blixseth's Motion to Dismiss and sets forth the Court's findings of fact and conclusions of law.  The Court will enter a separate memorandum of decision and order with respect to the other matters heard on October 2nd, 8th and 9th.

BACKGROUND

Blixseth and his former wife, Edra Blixseth ("Edra"), acquired land in Montana through various transactions, and through Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Yellowstone Club Construction Company, LLC and Big Sky Ridge, LLC (collectively the "Yellowstone Club entities"), began development in the late 1990s of the world's only private ski and golf community, commonly referred to as the Yellowstone Club.  The Yellowstone Club is a

membership only master-planned development, situated on 13,500 acres of private land in Madison County, Montana near Big Sky, Montana.

Until mid-August of 2008, the Yellowstone Club entities were controlled by Blixseth in his capacity as the sole shareholder of his holding company, Blixseth Group, Inc. ("BGI"), which was the sole Class A shareholder that owned approximately 87% of the outstanding stock in Yellowstone Mountain Club, LLC and Yellowstone Development, LLC, and presumably owned all the stock in Big Sky Ridge, LLC.[1]  Prior proceedings suggest that the Yellowstone Club Construction Company, LLC was owned by Yellowstone Development, LLC.

Blixseth served as President and CEO of BGI, an Oregon sub-S corporation, from 1999 to mid-August of 2008.  The Yellowstone Club entities, while under the control of BGI, and thus Blixseth, entered into a Credit Agreement with Credit Suisse, Cayman Islands Branch, dated September 30, 2005.  The Credit Agreement provided the Yellowstone Club entities with a $375 million Senior First Lien Credit Facility, which was funded in its entirety on September 30, 2005. In accordance with the Credit Agreement and upon closing the loan, $342,110,262.53 was wired to the Yellowstone Club entities on September 30, 2005.  This amount reflected the total loan amount of $375 million less fees, administrative costs, and a $24,241,910.98 takeout to payoff preexisting debt.  On the same date that $342,110,262.53 was transferred to the Yellowstone Club entities, approximately $209 million was transferred by Blixseth out of the Yellowstone Club entities to BGI.

The immediate transfer of funds out of the Yellowstone Club entities to BGI and then to

---

[1]  Yellowstone Mountain Club, LLC and Yellowstone Development, LLC have two classes of members; Class A members, who have voting rights, and Class B non-voting members

Blixseth was not memorialized in any contemporaneous loan documents but was simply reflected on the Yellowstone Club entities' books with a journal entry.  When the Class B shareholders started threatening suit against Blixseth and the Yellowstone Club entities regarding the $375 million Credit Suisse loan, Blixseth had a two-page promissory note in the amount of $209 million drafted.  The $209 million unsecured demand note, payable by BGI to the Yellowstone Club entities, was created in May 2006, and backdated to September 30, 2005.

Roughly all of the $209 million proceeds that were transferred from the Yellowstone Club entities to BGI were then disbursed to various personal accounts and payoffs benefitting Blixseth and Edra personally. Blixseth and Edra separated sometime in 2006 and Blixseth retained sole control of BGI and the Yellowstone Club entities until August of 2008, when Edra was awarded BGI and the Yellowstone Club entities as part of a marital settlement agreement. Edra, on August 19, 2008, changed the name of BGI to BLX Group, Inc. ("BLX").

As contemplated by the marital settlement agreement, and to obtain control of BGI and the Yellowstone Club entities, Edra was required to make various payments.  Edra was eventually successful in securing a $35 million loan from CIP ("CIP Loan").  The CIP Loan was evidenced by two notes:

1.  A Promissory Note in the principal sum of $13,000,000.00 made by BLX and Edra to CIP; and

2.  A Promissory Note in the principal sum of $22,000,000.00 made by BLX and Edra to CIP.

The CIP Loan was secured in part by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing granted by BGI for the benefit of CIP.  The BGI Deed of Trust encumbers property commonly known and numbered as 42765 Dunes View Road, Rancho

Mirage, California (the "Porcupine Creek Property"), as well as two single family houses (and associated personal property) located outside of the gates of the Porcupine Creek Property and commonly known and numbered as 71361 Gardess Road and 71621 Gardess Road, Rancho Mirage, California.  The CIP Loan is also secured by real property commonly referred to as the 160-acre Blixseth Family compound located within the Yellowstone Club.

Of the $35 million CIP Loan, CIP retained $13,094,973.33 to payoff a loan that Blixseth and Kawish, LLC owed to CIP.  CIP also retained $225,000 for closing costs and $28,000.00 for pre-closing interest.  In addition, cash was paid out as follows:

| | |
|---|---|
| Title Insurance Premium/Costs | $102,012.80 |
| LeMond Title Insurance Premium/Costs | $13,540.00 |
| Owner's Policy Title Insurance Premium/Cost | $7,834.00 |
| LeMond Payment (wired directly to LeMond) | $8,000,000.00 |
| California Property Tax | $624,763.00 |
| Tim Blixseth Payment (wired directly to Blixseth) | $4,944,396.17 |
| Archer Financing Fee (wired directly to Archer Capital) | $200,000.00 |
| Borrower Proceeds | $1,016,477.28 |
| Commerce Escrow Fee | $18,000.00 |
| Federal Tax Lien | $2,176,779.22 |
| Borrower Counsel Fee | $500,000.00 |

The CIP Loan was intended to be a short-term bridge loan to provide Edra time to secure longer-term financing.  The CIP Loan reached maturity and BLX and Edra have not paid the CIP Loan in full.  Moreover, since January of 2009, CIP has paid approximately $1,742,638.90 in the form of protective advances for Porcupine Creek to pay such things as insurance, utilities, maintenance and upkeep of the 19-hole private PGA golf course, security, etc.

Just months after Edra assumed control of the Yellowstone Club, Edra caused Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Yellowstone Club Construction Company, LLC and Big Sky Ridge, LLC to file for protection under Chapter 11 of

5

the Bankruptcy Code on November 10, 2008.  The Yellowstone Club entities' Third Amended Joint Plan of Reorganization was confirmed by this Court on June 2, 2009.  The Yellowstone Club Liquidating Trust, by virtue of the Yellowstone Club entities' confirmed Third Amended Joint Plan of Reorganization, is the successor-in-interest to numerous of the Yellowstone Club entities' claims, including the claim against BLX stemming from the $209 million unsecured demand note.

Edra filed for personal protection under Chapter 11 of the Bankruptcy Code on March 26, 2009.  This Court converted Edra's Chapter 11 bankruptcy to Chapter 7 of the Bankruptcy Code on May 29, 2009, and Richard J. Samson of Missoula, Montana was appointed as the Chapter 7 Trustee.  On October 6, 2009, this Court entered an Order permitting Western Capital Partners to pursue its nonbankruptcy remedies with respect to Edra's stock in BLX.

Because BLX and Edra defaulted on the CIP Loan, CIP caused a Notice of Default and Election to Sell Under Deed of Trust on January 7, 2009, to be filed in the Official Records of Riverside County, California.  A foreclosure sale of the BLX property was scheduled to occur on September 23, 2009.  This involuntary proceeding was filed on September 21, 2009.  Blixseth filed a separate involuntary proceeding against BLX in the United States Bankruptcy Court for the Central District of California on September 22, 2009.  As a result of the pending involuntary cases against BLX, CIP has continued the scheduled sale of the BLX property to October 23, 2009.

On September 22, 2009, the Yellowstone Club Liquidating Trust filed an Emergency Motion for Appointment of Trustee, requesting that the Court enter an Order directing the United States Trustee to appoint a trustee under 11 U.S.C. § 1104(a) to protect the assets of BLX.  CIP

6

subsequently filed on September 25, 2009, an Emergency Motion to Modify the Automatic Stay with respect to the "Porcupine Creek Property", as well as the Gardess Road properties located in Rancho Mirage, California. YCLT does not oppose CIP's Motion as it relates to the Gardess Road properties. Thereafter, Blixseth filed an Expedited Motion to Dismiss this involuntary proceeding on September 30, 2009, arguing that two of the petitioning creditors do not meet the requirements of 11 U.S.C. § 330(b)(1) because they either are not creditors of BLX or their claims are subject to a bona fide dispute. In the alternative, Blixseth argues that venue of this case should be transferred to the Central District of California because "[v]irtually all of the assets, creditors and claims of BLX Group are located in Riverside County, California."

The records in the various bankruptcies now pending before this Court also show that Palm Desert National Bank, who purports to have a security interest in Porcupine Creek, filed Adversary Proceeding No. 09-00069 against CIP on September 16, 2009, claiming that Porcupine Creek is Edra's asset, that Edra holds an equitable interest in Porcupine Creek, that BLX is Edra's alter ego, and that BLX holds Porcupine Creek in Trust for Edra. Palm Desert National Bank also requests that the Court direct CIP to first credit bid the fair market value of the Blixseth Family Compound--which Palm Desert National Bank asserts has a fair market value of between $8 and $13 million--before proceeding against Porcupine Creek. YCLT, Edra and BLX are also involved in Adversary Proceeding No. 09-00010, wherein YCLT and the Chapter 7 Trustee in Edra's bankruptcy have stipulated that Edra and BLX are enjoined from any actions to sell, transfer, assign, dispose of, encumber or otherwise affect the assets of BLX. Additionally, YCLT and Blixseth are involved in Adversary Proceeding 09-00014, which has already been the subject of a week-long trial, and are also involved in Adversary Proceeding 09-

7

00064.  As the foregoing shows, this involuntary proceeding is an extension of an already tangled web.

DISCUSSION

Blixseth argues that this involuntary proceeding should be dismissed because Suter Financial Group, Inc. and Moller's Garden Center, Inc. are not qualifying creditors under 11 U.S.C. 303(b)(1), which requires that each petitioning creditor be "a holder of a claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount[.]" The Court would note that the Petitioning Creditors filed a "Notice of Additional Petitioning Creditor on October 5, 2009, at docket entry no. 91, identifying First West, Inc. as an additional petitioning creditor.  Suter Financial Group, Inc. then filed a "Notice of Withdrawal of Request for Relief" on October 7, 2009, which Notice is found at docket entry no. 105.  Thus, the three petitioning creditors are now YCLT, Moller's Garden Center, Inc., and First West, Inc. Blixseth does not dispute that YCLT has a valid and substantial unsecured claim against BLX stemming from the $209 million unsecured demand note.

Karen Moller of Moller's Garden Center, Inc. testified that Moller's Garden Center, Inc. sold various products to BGI in 2006 and 2007 as reflected in the thirty-seven invoices identified in Exhibit 7.  Exhibit 8 shows that the balance on BGI account 14481 was $7,622.71 as of October 25, 2009.  With respect to account 14481, it appears that BGI made purchases totaling $13,557.66.  BGI made payments to Moller's Garden Center, Inc. of $6,528.22 on November 21, 2007, and $1,098.25 on December 24, 2007.  The November 21, 2007, payment was applied to invoices dated October 31, 2006, through October 27, 2007.  However, Exhibit 8 shows that invoices dated October 15, 23 and 25, 2007, totaling $5,931.19 were not paid and are still

8

outstanding.[2]

Similarly, Exhibit 8 shows that the balance on BGI account 311 was $9,610.10 as of October 25, 2009.  With respect to account 311, it appears that BGI made purchases between August 15, 2006, and January 17, 2008.  BGI made substantial payments to Moller's Garden Center, Inc., including payments made on November 21, 2007, and December 24, 2007.  However, Exhibit 8 shows that invoices dated September 26, 2007, through October 31, 2007, totaling $7,647.28 were not paid and are still outstanding.[3]

Patrick Ratte, the Controller of BGI in 2007, notified Moller's Garden Center, Inc. in a letter dated November 30, 2007, that because Blixseth and Edra were divorcing, that neither Blixseth nor BGI would be responsible for any future purchases by Edra.  Exhibit 8.  Karen Moller, on behalf of Moller's Garden Center, Inc., replied in a letter dated December 11, 2007, that she would "close all Blixseth Group accounts to new charges, effective December 15, 2007."  After December 15, 2007, Karen testified that Edra began making her purchases under the name of P.C. Resources.

After reviewing Exhibits 7, 8, 9 and 10, the Court finds that the petitioning creditors have shown by a preponderance of the evidence that Moller's Garden Center, Inc.'s claim of $17,231.91 is not subject to a bona fide dispute.  Blixseth's counsel asked Karen Moller whether check numbers 20034 and 20353 in the total amount of $61,358.48 were reflected on Exhibits 7 and 8.  Karen Moller explained that if BGI made such payments in 2007, that perhaps those payments were applied to outstanding invoices from 2006.  Blixseth's counsel's reference to

---

[2]  The amount due of $7,621.81 on account 14481 includes finance charges of $1,690.62.

[3]  The amount due of $9,610.10 on account 311 includes finance charges of $1,962.82.

check numbers 20034 and 20353 is nothing more than attorney argument, and attorney argument is not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz.*, *et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994); *In re Nielsen*, 211 B.R. 19, 22 n.3 (8th Cir. BAP 1997) (Neither statements of counsel nor exhibits to a brief are evidence unless expressly stipulated as admissible evidence); *Haymaker v. Green Tree Consumer Discount Co.*, 166 B.R. 601, 607 (Bankr. W.D. Pa. 1994) (Documents attached to debtors' motion do not constitute evidence and may not be considered by the court).

Next, Debbie Duneman, the chief financial officer of First West, Inc. testified that her company sold a commercial liability insurance package to BGI in 2008. The First West, Inc. insurance policy ran from May 1, 2008, to May 1, 2009. Exhibit 3. Effective August 13, 2009, the insurance issued to BGI was amended to name BGI and Edra as the insureds. BGI made two quarterly installment payments on the insurance package, but the balance owing on BGI's commercial liability insurance package as of August 6, 2009, was $10,284.78. Blixseth's counsel claimed that he did not have time to prepare a proper cross-examination of Debbie Duneman as First West, Inc. was not disclosed as a petitioning creditor until October 5, 2009. Instead, Blixseth's counsel offered into evidence a list of BLX's creditors, Exhibit 100, which Exhibit is intended to support Blixseth's request for change of venue.

After considering the testimony and exhibits, the Court finds that YCLT, Moller's Garden

Center, Inc., and First West, Inc. are qualifying petitioning creditors under 11 U.S.C. § 303(b)(1).

Moreover, their claims aggregate more than $13,475.00, as required by11 U.S.C. § 303(b)(1).

Blixseth's Motion to Dismiss is therefore denied.[4]

In the alternative, Blixseth requests under Rule 1014(b), F.R.B.P., that venue of this case

be changed to the Central District of California.  Venue under 28 U.S.C. § 1408(2) is permissive

and provides that venue of a case commenced under the Bankruptcy Code is proper in any

district "in which there is a case pending under [the Bankruptcy Code] concerning such person's

affiliate, general partner, or partnership." 28 U.S.C. § 1408(2).  Rule 1014(b) provides:

> (b) Procedure when petitions involving the same debtor or related debtors are filed
> in different courts.
>
> If petitions commencing cases under the Code are filed in different districts by or
> against (1) the same debtor, or (2) a partnership and one or more of its general
> partners, or (3) two or more general partners, or (4) a debtor and an affiliate, on
> motion filed in the district in which the petition filed first is pending and after
> hearing on notice to the petitioners, the United States trustee, and other entities as
> directed by the court, the court may determine, in the interest of justice or for the
> convenience of the parties, the district or districts in which the case or cases
> should proceed. Except as otherwise ordered by the court in the district in which
> the petition filed first is pending, the proceedings on the other petitions shall be
> stayed by the courts in which they have been filed until the determination is made.

In the instant case, two involuntary petitions have been filed against BLX, one in this

District and one in the Central District of California.  Thus, petitions commencing cases under

the Bankruptcy Code have been filed in different districts against the same debtor.  However,

given Edra's bankruptcy, there are also petitions under the Bankruptcy Code filed in different

---

[4] The Court is denying Blixseth's Motion to Dismiss on the merits.  However, the Court
agrees with YCLT that Blixseth lacks standing to seek dismissal of this involuntary proceeding
because under Rule 1001(a), F.R.B.P., only "[t]he debtor named in a involuntary petition, or a
party in interest to a petition for recognition of a foreign proceeding, may contest the petition.

districts by a debtor and an affiliate.

The term "affiliate" is defined as any "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. § 101(2).  The term "entity" includes persons. 11 U.S.C. § 101(15).  The Debtor in this proceeding, BLX, is an Oregon sub-S corporation and as of the involuntary petition date, Richard J. Samson, as the duly appointed and acting trustee in Edra's Chapter 7 bankruptcy, was the sole shareholder of BLX.   Edra  has all residual equity in the shares of BLX if creditors are paid in full in her bankruptcy.

Accordingly, Edra is an "affiliate" of BLX as that term is defined in the Bankruptcy Code.  Because Edra's bankruptcy is a "case pending under [the Bankruptcy Code] concerning [BLX's] affiliate," and because Edra's bankruptcy is pending in the District of Montana, venue of this case is appropriate in the District of Montana and thus, this Court has the discretion to determine, in the interest of justice or for the convenience of the parties, the district or districts in which the case or cases should proceed.  The foregoing dovetails with the question of whether venue of this case should be transferred to the Central District of California under 28 U.S.C. § 1412, which reads: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

In support of his change of venue request, Blixseth discusses the six criteria that courts employ in determining whether to transfer venue.  While Blixseth's arguments are persuasive on their face, Blixseth fails to address the fact that BLX was owned solely by Edra.  Moreover, BLX was the majority shareholder of the Yellowstone Club entities.  Both Edra and the Yellowstone Club entities filed for protection under the Bankruptcy Code in this District.  The instant

12

involuntary proceeding against BLX is not a surprise. This Court is very familiar with the milieu in which BLX operates and indeed, the BLX bankruptcy brings before this Court an essential party to proceedings that have been and are being vigorously litigated. Retaining venue of this case in this District will allow for the harmonious administration of numerous bankruptcy estates. As a consequence, Blixseth's request for a change of venue is denied.

For the reasons discussed herein, and in accordance with the Court's oral ruling made October 9, 2009, the Court will enter a separate order providing as follows:

IT IS ORDERED that Timothy L. Blixseth's Expedited Motion to Dismiss Involuntary Petition for Lack of Subject Matter Jurisdiction or, alternatively, to Transfer Venue to Central District of California filed September 30, 2009, at docket entry no. 51, is DENIED.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana