UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BLX GROUP INC**,

Debtor.

Case No. **09-61893-11**

# MEMORANDUM of DECISION

At Butte in said District this 15th day of June, 2010.

In this Chapter 11 bankruptcy, Carl A. Eklund ("Trustee"), the Chapter 11 Trustee herein, filed an Amended Motion Under Rule 9010 of the Bankruptcy Rules for Order Approving Settlement with CIP Yellowstone Lending, LLC on April 27, 2010. Richard J. Samson, as trustee for the Chapter 7 bankruptcy estate of Edra D. Blixseth (the "Edra Blixseth Trustee") filed an Objection to the Trustee's Amended Motion on May 14, 2010; Western Capital Partners, LLC filed an Objection to the Trustee's Amended Motion on May 15, 2010; and Timothy L. Blixseth filed an Objection on May 15, 2010, and an Amended Objection to the Trustee's Amended Motion on May 16, 2010. Marc S. Kirschner, as Trustee of the Yellowstone Club Liquidating Trust, filed a joiner to the Trustee's Amended Motion on June 3, 2010. After due notice, a hearing on approval of the Trustee's Amended Motion and the objections thereto, was held June 7, 2010, in Butte. Vincent J. Marriott, III of Philadelphia, Pennsylvania, Jon Bernhardt of Denver, Colorado and Steven Johnson of Great Falls, Montana appeared at the hearing on behalf of the Trustee; Christopher J. Conant of Denver, Colorado appeared on behalf of Western Capital

Partners, LLC; the Edra Blixseth Trustee, Richard J. Samson of Missoula, Montana appeared at the hearing; Daniel D. Manson of Butte, Montana appeared on behalf of Timothy L. Blixseth; Paul D. Moore and Barry Green of Boston, Massachusetts appeared on behalf of CrossHarbor Capital Partners LLC and CIP Yellowstone Lending LLC (CIP"); and Daniel P. McKay of Great Falls, Montana appeared on behalf of the United States Trustee. Carl A. Eklund and Matthew Kidd testified. The Trustee's Demonstrative Exhibits 1 through 6 and the Trustee's Exhibits 7 through 11 were admitted into evidence without objection.

## FACTUAL BACKGROUND

As explained in the Trustee's Amended Motion, the Yellowstone Club Liquidating Trust ("YCLT"), Moller's Garden Center, Inc., and Suter Financial Group, Inc. filed, pursuant to 11 U.S.C. § 303(c), an involuntary petition for relief against the Debtor under Chapter 11 of the Bankruptcy Code on September 21, 2009. First West, Inc. was added as a petitioning creditor on October 5, 2009, Suter Financial Group, Inc. withdrew on October 7, 2009, and, after a contested hearing, the Court granted the Order of Relief dated October 15, 2009. Carl A. Eklund was appointed to serve as the Chapter 11 Trustee on October 29, 2009.

CIP, the Debtor, and Edra D. Blixseth ("Edra") are parties to a loan transaction pursuant to which CIP agreed to lend to the Debtor and Edra the total principal sum of $35,000,000 (the "CIP Loan"), evidenced by two promissory notes, each dated as of August 13, 2008, one in the original principal amount of $13,000,000 (the "$13mm Note"). The other note was in the original principal amount of $22,000,000 (the "$22mm Note" and, with the $13mm Note, the "Notes"). Of the $35,000,000 original principal amount of the CIP Loan, $34,858,621.41 was advanced by CIP. Both of the Notes are secured by, among other things, real and personal

property of the Debtor located at 42765 Dunes View Road, Rancho Mirage, California ("Porcupine Creek"), in accordance with a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated as of August 13, 2008, and recorded on August 14, 2008 in the Official Records of Riverside County, California, as Document No. 2008-0447452 (the "CIP PC Lien").

In addition to the CIP PC Lien, (1) the $13mm Note is secured by a lien on certain real and personal property of Edra located in Madison County, Montana (the "Family Compound"), in accordance with a Mortgage and Security Agreement, dated as of August 13, 2008, and recorded on August 13, 2008, in the records of the Madison County, Montana Clerk and Recorder as Document No. 127406, (2) the $22mm Note is secured by the Family Compound in accordance with a Mortgage and Security Agreement, dated as of August 13, 2008, and recorded on August 13, 2008, in the records of the Madison County, Montana Clerk and Recorder as Document No. 127408, and (3) both Notes are secured by (a) 71361 Gardess Road, Rancho Mirage, California, and 71621 Gardess Road, Rancho Mirage, California, owned by the Estate (the "Gardess Road Properties"), and (b) 18 King Edward Court, Rancho Mirage, California (the "King Edward Court Property"), owned by Edra.

At the time of the funding and closing of the CIP Loan, the Debtor's principal assets included ownership of a controlling interest in Yellowstone Mountain Club, LLC ("YMC"), Yellowstone Development, LLC ("YD"), and Big Sky Ridge, LLC (with YMC and YD, the "Yellowstone Club Entities"), through which the Debtor controlled the exclusive, private, luxury ski and golf resort located in Big Sky, Montana known as the Yellowstone Club.

The facts show that Edra sought the loan from CIP in order to perform certain obligations under a Marital Settlement Agreement, dated June 26, 2008, between Edra and Timothy L. Blixseth ("Blixseth"), as amended by letter agreement dated June 26, 2008, as further amended by Amendment to Marital Settlement Agreement, dated July 2, 2008, and as further amended by Second Amendment to Marital Settlement Agreement, dated August 12, 2008 (collectively, the "MSA"). Pursuant to the MSA, Edra, among other things, obtained sole ownership of the Debtor and of the Family Compound.

The CIP Loan was intended to be a short-term bridge loan so Edra could stabilize the Yellowstone Club and stabilize Porcupine Creek, which was described as a fragile property in the desert. Edra was seeking to obtain long-term financing from Archer Capital. However, Lehman Brothers filed bankruptcy in the fall of 2008, which precluded Archer Capital from funding Edra's long-term financing needs.

The Debtor and Blixseth directed the disbursement of the proceeds of the CIP Loan as follows:

- Closing Costs (including counsel fees and title insurance): $866,386.80

- Payment in partial satisfaction of the obligations (the "LeMond Obligations") of the Debtor, Blixseth, the YC Entities, and Yellowstone Club World, LLC to Greg LeMond, David and Sacia Morris, Jorge V. Jasson, and Sacia Enterprises, Inc. (collectively, the "LeMond Group"), under four Settlement and General Release Agreements, dated as of August 13, 2008, related to certain litigation involving such parties (the "LeMond Litigation"): $8,000,000.00 (the "LeMond Payment")

- Payment of California property tax on Porcupine Creek: $624,763.00 (the "Tax Payment")

- Payment to TLB under the MSA: $4,944,396.17

- Payment to Archer Capital of commitment fee for contemplated $58,000,000

4

   million loan (the "Archer Loan"): $200,000.00

- Payment to Blixseth: $1,016,477.28

- Repayment of an existing loan to TLB and Kawish, LLC, that was secured by the Family Compound: $13,094,973.33

- Discharge of a Federal tax lien against Blixseth: $2,176.779.22

- Provision of working capital for YMC: $3,906,845.20 (the "Working Capital Advance")

CIP contends that as a result of the foregoing disbursements, Edra intended and endeavored thereby to resolve her marital disputes with Blixseth relating to ownership of the Debtor and Yellowstone Club, end adverse publicity resulting from such disputes as well as the LeMond Litigation that CIP contends impaired the value of the Yellowstone, and reinvigorate lot and membership sales and otherwise maximize value of the Yellowstone Club.

As a condition to funding of the CIP Loan, Club YC Acquisition, LLC, (an affiliate of CIP), Edra, and the Debtor entered into an Agreement to Form, dated as of August 13, 2008 (the "Agreement to Form").  Among other things, the Agreement to Form required Edra to take, or to cause the Debtor to take, certain steps, including the sale of certain assets and the use of the proceeds thereof to fund the operations of the Yellowstone Club Entities, the stated purpose of which was to stabilize the operations of the Yellowstone Club Entities (the "Agreement to Form Obligations").

As previously noted, the CIP Loan was intended as a bridge to the closing of the Archer Loan (and to be refinanced thereby), and had a maturity date of September 30, 2008.  The Archer Loan was not funded, and the CIP Loan was not repaid on its maturity date.  The  principal amount of the CIP Loan remains outstanding, together with accrued interest, fees, and expenses,

including certain advances totaling $1,771,923.00 expended to preserve and protect Porcupine Creek (the "Protective Advances").

On October 23, 2009, prior to the appointment of the Trustee, YCLT, on behalf of the Estate, commenced an Adversary Proceeding, seeking avoidance of the CIP PC Lien as a fraudulent transfer on the basis that (1) the Debtor received no benefit from the CIP Loan, and (2) the Debtor (a) was insolvent at the time the CIP Loan was made or was rendered insolvent thereby, (b) was left with unreasonably small capital, or (c) was left unable to pay its debts as they matured. Following his appointment on October 29, 2009, the Trustee was substituted for YCLT as plaintiff in the Adversary Proceeding.

As of December 21, 2009, CIP PC Lending LLC ("CIP-PC"), an affiliate of CIP, and the Estate entered into, and by final order (the "Financing Order") this Court approved, a Senior Secured, Super-Priority Post-Petition Financing Credit Agreement, pursuant to which CIP-PC agreed to lend to the Estate up to $5,400,000 to restore and maintain Porcupine Creek and for general administrative purposes (the "PC DIP Loan"). In accordance with the terms and conditions of a Deed of Trust, Assignment of Leases and Rents, Security Interest, and Fixture Filing, dated as of December 21, 2009, and recorded on January 7, 2010, in the Official Records of Riverside County, California, as Document No. 2010-005804, and under the terms of the Financing Order, the PC DIP Loan is secured by, among other things, a first priority lien on and security interest in Porcupine Creek, senior to all other pre- or post- petition liens thereon or security interests therein (the "PC Priority Lien"). In connection the PC DIP Loan, the Trustee stipulated that the CIP PC Lien was valid, binding, and enforceable with respect to the Protective Advances, and as to such advances was not avoidable in connection with the Adversary

Proceeding.

In addition to the Protective Advances, the Trustee believes that the Debtor received fair consideration for the CIP PC Lien with respect to an additional $12,843,508.20 of the original principal amount of the CIP Loan consisting of:

- The LeMond Payment ($8,000,000)
- The Tax Payment ($624,763.00)
- The Working Capital Advance ($3,906,845.20)
- A pro rata share of Closing Costs (0.36 x $866,386.80 = $311,900)

for a total of $14,615,431.20 in principal amount that the Trustee believes is not subject to avoidance, inclusive of the Protective Advances.

CIP asserts that the Debtor also received fair consideration for the balance of the CIP Loan that was advanced, equal to $22,015,112.80, in the form of direct and indirect benefits to the Debtor, including, without limitation, arising from the Agreement to Form Obligations specifically and, more generally, from a concurrent overall effort to stabilize and normalize the financial condition and operations of Yellowstone Club through, among other things, the elimination of ownership disputes and the provision of working capital. CIP also has denied the allegations by the Trustee in the Adversary Proceeding that the Debtor was insolvent, under capitalized, or unable to pay its debts as they matured.

As of March 25, 2010 (the "Balance Calculation Date"), the total amount secured by the CIP PC Lien was $47,391,477.42, consisting of $36,630,543.99 in principal (including the Protective Advances), $1,325,090.64 in expenses, and $9,435,842.79 in interest (the "Outstanding Balance").

7

As explained in the Trustee's Amended Motion, the Trustee and CIP have reached an agreement to settle associated Adversary Proceeding No. 09-00089 through a combination of a cash payment, partial lien avoidance, and certain other consideration, all as summarized in the Amended Motion and the Settlement Agreement.

Under the umbrella of Edra's bankruptcy Western Capital Partners, LLC filed a complaint against CIP seeking to set aside CIP's liens stemming from the $35 million loan. The Edra Blixseth Trustee has assumed prosecution of that Adversary Proceeding. The Edra Blixseth Trustee opposes the settlement between the Trustee in this case and CIP arguing that the settlement might be construed as prejudicing Edra's bankruptcy estate, including its ability to assert claims and causes of action against CIP and BLX. The Edra Blixseth Trustee argues that the proposed settlement should not be approved in its current form without confirmation from the parties or the Court that nothing about the settlement or the dismissal with prejudice of the BLX action against CIP is intended to have any effect on Edra's bankruptcy estate. Similarly, Western Capital Partners, LLC argues that the Trustee's proposed settlement with CIP is anything but "fair and equitable" but is instead yet another "surreptitious attempt" by CIP to buy with little to no consideration, res judicata and collateral estoppel effect as to disputed facts and issues through settling with a bankruptcy Trustee for the purpose of limiting its liability to third parties in ongoing or potential litigation.

Blixseth opposes approval of the Trustee's proposed settlement arguing that if the settlement is approved, CIP will have gained immensely because it will retain its liens on all of the collateral it took to secure what was clearly a predatory loan to Edra in order to finance the consummation of the Marital Settlement Agreement. Blixseth asserts that approval of the

8

settlement will allow CIP to avoid further scrutiny into its wrongful, and possibly criminal conduct, with regard to its takeover of the Yellowstone Club.

## DISCUSSION

This Court addressed the test for compromise and settlement under F.R.B.P. Rule 9019(a) in *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bank. D. Mont. 1991) as follows:

> "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d1377, 1380-81 (9th Cir.) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties*, 784 F. 2d at 1381.
>
> *Woodson*, 839 F. 2d at 620 (additional citation omitted).
>
> *See also In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

The first factor to evaluate whether a settlement is fair and equitable is the probability of success in the litigation. *A & C Properties*, 784 F. 2d at 1381. A precise or exact judicial determination of the likely outcome is not required because that would defeat the purpose of

9

compromising the litigation.  *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr. N.D. Ill 1994); *In re Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989), quoting *In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3rd Cir. 1979).  In the Ninth Circuit a bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim, but rather "[i]t is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is doubtful."  *United States of America v. Alaska National Bank, et al. (Matter of Walsh Const., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (citing cases).  The Ninth Circuit cited *Walsh* approvingly in *A & C Properties,* 784 F.2d at 1380-81, noting that the purpose of a compromise agreement is to allow the trustee and creditors "to avoid the expenses and burdens associated with litigating sharply contested and dubious claims," and that the "law favors compromise and not litigation for its own sake."  *See also Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

The first *A & C Properties* factor favors approval of the settlement.  Eklund testified that he did not conclude that BLX was solvent at the time it entered into the loan agreement with CIP.  However, Eklund believed that solvency would be a hotly contested issue at any trial.  This Court agrees.  In a trial that took place over a period of nine days under the umbrella of the Yellowstone Club bankruptcy, this Court heard extensive testimony on the solvency of BLX and the Yellowstone Club.  Based on that evidence, this Court is inclined to agree that BLX was solvent on the date that CIP made the $35 million loan to Edra and BLX.  Such determination would adversely impact prosecution of possible claims against CIP stemming from the $35

10

million loan agreement. At the very least, the Trustee's probability of success in litigation against CIP is uncertain.

The second factor is the difficulties, if any, to be encountered in the matter of collection. *A & C Properties*, 784 F. 2d at 1381. The second standard is inapplicable here given that the Trustee would be seeking to set aside a lien, as opposed to collecting a money judgment against CIP.

The third factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. *A & C Properties*, 784 F. 2d at 1381. The history of various of the parties associated with the case shows that litigation will be complex and expensive. The fourth and final factor is the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *A & C Properties*, 784 F. 2d at 1381. YCLT is the largest creditor in this case and they support approval of the Trustee's settlement with CIP. All matters considered, the Court finds that factor four weighs in favor or approving the settlement.

Having determined that three of the four *A & C Properties* factors support approval of the settlement, the Court overrules the Edra Blixseth Trustee, Western Capital Partners, LLC and Blixseth's objections, and grants the Trustee's Amended Motion and approves his settlement with CIP.

## CONCLUSIONS OF LAW

1. This Court has original and exclusive jurisdiction in the Debtor's Chapter 11 case under 28 U.S.C. § 1334(a).

2. The Trustee's Amended Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A)

and (B).

3. The Trustee satisfied his burden of proof under Rule 9019(a), F.R.B.P., of showing that three of the four factors listed *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) weigh in favor of approval of the proposed settlement with CIP

4. This Court exercises its discretion as provided in *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988), and approves the Trustee's settlement with CIP.

Accordingly, consistent with the Court's oral ruling made June 7, 2010, the Court will enter a separate order providing as follows:

**IT IS ORDERED** the Edra Blixseth Trustee, Western Capital Partners, LLC and Timothy L. Blixseth's Objections filed at docket entry nos. 388, 395 and 398, respectively, to the Amended Motion Under Rule 9019 of the Bankruptcy Rules for Order Approving Settlement with CIP Yellowstone Lending, LLC are OVERRULED; the Amended Motion Under Rule 9019 of the Bankruptcy Rules for Order Approving Settlement with CIP Yellowstone Lending, filed April 27, 2010, at docket entry no. 359, is APPROVED; and as between the Trustee in this Chapter 11 bankruptcy case and CIP, and without prejudice whatsoever to any other party or parties,

    a.    The Estate Avoided Lien shall be preserved for the benefit of the Estate in accordance with 11 U.S.C. § 551 and shall be (I) senior to any liens, claims, or encumbrances junior to the Retained CIP PC Lien, and (ii) junior to the PC Priority Lien and to the Retained CIP PC Lien, and any proceeds from the sale of Porcupine Creek shall be held by the Estate for the benefit of the administrative,

12

priority, and unsecured creditors thereof;

(b) Other than the Estate Avoided Lien and as otherwise amended by the Settlement Agreement, the CIP Loan and the CIP Loan Documents shall be deemed valid, binding, enforceable, and unavoidable and an allowed secured claim against the Estate. The Outstanding Balance, together with interest, fees, costs, and expenses thereafter accruing (subject in the case of thereafter accruing items, to the provisions of the CIP Loan Documents and 11 U.S.C. § 506(b)), less the Estate Avoided Lien, shall be deemed due and owing to CIP by the Debtor and the Estate, without offset, deduction, counterclaim, or defense (the "Loan Balance"). Other than the Estate Avoided Lien, the liens and security interests granted in connection with the CIP Loan as to Porcupine Creek and all other property of the Estate encumbered by the CIP PC Lien and/or any other CIP Loan Document (such property collectively, the "CIP Loan Collateral"), all as modified by the Settlement Agreement, shall be deemed perfected, enforceable first priority liens (subject only to the liens and security interests securing the PC DIP Loan) on and security interests in the CIP Loan Collateral and not subject to avoidance, recharacterization, subordination, or other challenge by any person, party, or entity, including, without limitation, the Edra Estate and any creditor thereof or anyone acting or purporting to act on behalf of the Edra Estate including, without limitation, Western Capital Partners LLC. In connection with any sale (whether by Section 363 sale, foreclosure, plan of reorganization, or otherwise) of any CIP Loan Collateral, CIP shall have the right to credit bid all or part of the Loan

13

Balance.

(c) Except for the agreements of the Estate and CIP as set forth in the Settlement Agreement as to their respective obligations, rights, claims or remedies under the CIP Loan and CIP Loan Documents, the terms of the Settlement Agreement shall not alter, impair, affect or otherwise modify, directly or indirectly, any of the obligations, rights, claims or remedies of either the Edra Estate or CIP with respect to the Edra Estate under the CIP Loan Documents, or impair, affect or otherwise modify, directly or indirectly, the enforceability, validity, perfection or priority of, or the amount owing and secured by, the CIP Loan Documents or the liens and security interests created thereby with respect to the Edra Estate, all of which shall remain unaffected by the Settlement Agreement

(d) Effective upon receipt of the Settlement Payment, the Fraudulent Transfer Adversary Proceeding shall be dismissed with prejudice, each party to bear its own costs and waiving all rights of appeal.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction to interpret and enforce the provisions of this Order and the terms of the Settlement Agreement.

BY THE COURT

*[signature: Ralph B. Kirscher]*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana