UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BLX GROUP INC**,

Debtor.

Case No. **09-61893-11**

# MEMORANDUM of DECISION

At Butte in said District this 22nd day of November, 2011.

In this Chapter 11 bankruptcy, after due notice, a hearing was held October 17, 2011, in Missoula on confirmation of the Trustee's Third Amended Plan of Liquidation filed September 8, 2011, as supplemented by the Addendum filed October 7, 2011 (the "Plan"). Vincent J. Marriott, III of Philadelphia, Pennsylvania, James P. Bickford of Denver, Colorado and Michael P. Talia of Great Falls, Montana appeared at the hearing on behalf of Carl A. Eklund, the Chapter 11 Trustee for the estate of BLX Group, Inc.; Patrick T. Fox of Helena, Montana appeared at the hearing on behalf of Timothy Blixseth ("Blixseth"); and Charles W. Hingle of Billings, Montana appeared on behalf of Marc S. Kirschner, Trustee of the Yellowstone Club Liquidating Trust ("YCLT"). Carl A. Eklund testified in support of confirmation. The Trustee's Exhibits 1 through 19 and Blixseth's Exhibits 1 through 6 were admitted into evidence.

## JURISDICTION and VENUE

The Bankruptcy Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28

U.S.C. § 1334.  Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) as it arises in and under the Bankruptcy Code, and this Bankruptcy Court has exclusive jurisdiction to enter a final order with respect to confirmation of the Plan.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  The Trustee is a proper plan proponent under section 1121(c) of the Bankruptcy Code.

BALLOT REPORT, VOTING and OBJECTIONS TO THE PLAN

The Chapter 11 Ballot Report filed October 13, 2011, reflects that all creditors who returned ballots voted to accept the Trustee's Plan.  As provided in a summary prepared by the Trustee, Class 1 was not entitled to vote; the Trustee received no Class 2 Ballots; Class 3 was not entitled to vote; the Trustee received one Class 3A Ballot from the California Franchise Tax Board, who voted to accept the Plan; the Trustee received no Class 4 Ballots; the Trustee received three Class 5 Ballots, one each from West Coast Turf, the California Franchise Tax Board, and YCLT, all of whom voted to accept the Plan; and Class 6 was not entitled to vote.  Votes to accept or reject the Trustee's Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Montana, and applicable nonbankruptcy law.

The sole objection to confirmation of the Plan was lodged by Blixseth, who claims he is a party in interest.  Blixseth filed a claim in this case, asserting an unsecured claim in the amount of $999,996 for management services stemming from Blixseth's marital settlement agreement with Edra Blixseth.  Blixseth maintains in his objection to confirmation filed October 7, 2011, at

2

docket entry no. 801, p.7, that he "has not filed a Proof of Claim[.]" as previously mentioned, contrary to the assertion in Blixseth's objection to confirmation, the Court's claims register shows Blixseth filed Proof of Claim No. 14 on April 14, 2010. Whether a party in interest or a creditor, Blixseth objects to confirmation arguing the Trustee's plan is infeasible and that the Plan violates Ninth Circuit law.

Blixseth's argument that the Trustee's Plan is not feasible has two components. First, Blixseth argues the Plan is not feasible because the claims of the estate against Blixseth are without merit. Second, Blixseth argues the Trustee's Plan unfairly treats YCLT's claim as valid, when the Trustee should have brought such a contested matter before the Court in accordance with F.R.B.P. 9014. Blixseth's second argument, that the Plan violates Ninth Circuit law, consists of basically three components. First, Blixseth argues the plan improperly assigns to YCLT, for purposes of collection, the claims of the estate against Blixseth. Next, Blixseth argues the Plan improperly provides for jurisdiction by this Court over the Estate Blixseth claims, and finally, Blixseth argues the that the exculpation clause in the Plan is impermissibly broad.

## DISCUSSION

After reviewing the Plan and after considering Carl A. Eklund's testimony, the Court makes the following findings:

    a.    The Plan satisfies 11 U.S.C. § 1122(a) as the classification scheme is reasonable and necessary to implement the Plan, and each of the claims or interests within each particular class is substantially similar to the other claims or interests in such class;

    b.    The Plan satisfies 11 U.S.C. § 1123(a) as the Plan fully complies with each of the applicable requirements set forth therein;

3

  c. The Trustee, as proponent of the Plan, has complied with 11 U.S.C. §1125 in connection with disclosures and solicitation of acceptances of the Plan;

  d. The Plan has been proposed in good faith and not by any means forbidden by law, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(3);

  e. The Plan provides that all costs and expenses incurred during the course of the chapter 11 proceeding remain subject to final review for reasonableness under Bankruptcy Code section 330, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(4);

  f. To the extent possible, the Plan discloses sufficient information on the Agent, as successor to the Debtor, including the identity of the Agent, and such disclosure is consistent with the interests of creditors and equity security holders and public policy, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(5)(A);

  g. 11 U.S.C. § 1129(a)(6) is not applicable in this case;

  h. Each holder of a claim or interest has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date, and accordingly, the Plan satisfies the "best interests of creditors" test found at 11 U.S.C. § 1129(a)(7);

  i. All impaired classes of claims or interests have voted to accept the Plan, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(8);

  j. The Plan provides that all allowed claims under 11 U.S.C. §§ 507(a)(2) and (3), as applicable, are administrative claims to be paid in cash on the earlier of the Effective Date or when they become allowed claims, unless otherwise agreed by the holder of the Administrative

4

Claim and the Debtor or Agent, as applicable, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9)(A);

  k. The Plan provides that all allowed claims under 11 U.S.C. §§ 507(a)(1), (4), (5), (6), or (7), as applicable, are priority claims to be paid in cash on the earlier of the Effective Date or when they become allowed claims, unless otherwise agreed by the Holder of the claim and the Debtor or Agent, as applicable, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(9)(B);

  l. 11 U.S.C. §§ 1129(a)(9)(C) and (D) are not applicable in this case;

  m. As evidenced by the ballot report submitted by the Trustee, the Plan has been accepted by at least one impaired class that does not include the claims of insiders, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(10);

  n. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(11);

  o. The Plan provides that the filing fees and the United States Trustee fees listed in 28 U.S.C. § 1930 will be paid in full, and accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(12);

  p. 11 U.S.C. § 1129(a)(13) is not applicable in this case;

  q. 11 U.S.C. § 1129(a)(14) is not applicable in this case; and

  r. 11 U.S.C. § 1129(a)(15) is not applicable in this case.

Having determined that the Plan satisfies the above provisions of the Bankruptcy Code,

the Court next turns to Blixseth's objections to confirmation. Blixseth argues the Plan violates Ninth Circuit law because "the language of ¶ 5(a), whatever its intended scope is, goes well beyond the limitation of 11 U.S.C. § 524(e)." The Court disagrees.

The exculpation clause at issue in the Plan reads as follows:

<u>Exculpation and Limitation of Liability</u>.

(a) Neither the Estate, the Trustee, or the Agent, nor any of their respective present or former advisors, Professionals, or agents, shall have or incur any liability to any Holder of a Claim or Equity Interest, or any other party-in-interest, or any of their respective agents, employees, managers, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of this Plan, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for acts or omissions that are the result of fraud, breach of fiduciary duties, gross negligence, or willful misconduct; <u>provided</u>, <u>however</u>, that the foregoing is not intended to limit or otherwise impact any defense of qualified immunity that may be available under applicable law.

(b) Notwithstanding any other provision of this Plan, no Holder of a Claim or Equity Interest, no other party-in-interest, none of their respective agents, employees, representatives, advisors, attorneys, or affiliates, and none of their respective successors or assigns shall have any right of action against any of the Estate, the Trustee, the Agent, or any of their respective present or former advisors, Professionals, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of this Plan, solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for acts or omissions which are the result of fraud, breach of fiduciary duties, gross negligence, or willful misconduct; <u>provided</u>, <u>however</u>, that the foregoing is not intended to limit or otherwise impact any defense of qualified immunity that may be available under applicable law.

The Ninth Circuit, in *In re American Hardwoods, Inc.,* 885 F.2d 621, 626 (9th Cir. 1989), and *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995), held

that under § 524(e), a bankruptcy court does not have the authority to permanently enjoin a creditor from continuing with and enforcing a state court judgment against non-debtor guarantors.[1] The ruling articulated in *American Hardwoods,* as reiterated in *Lowenschuss*, is not implicated here.

In *American Hardwoods*, a chapter 11 debtor sought to permanently enjoin a creditor from enforcing a state court judgment against the debtor's guarantors, who also happened to be the debtor's president and vice president. The Ninth Circuit held that the bankruptcy court lacked jurisdiction and power to permanently enjoin a creditor, beyond confirmation of the plan, from enforcing a state court judgment against the nondebtor guarantors. In reaching its decision, the Ninth Circuit explained:

> Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 empowers the court to enjoin preliminarily a creditor from continuing an action or enforcing a state court judgment against a nondebtor prior to confirmation of a plan. *In re A.H. Robins Co.*, 828 F.2d 1023, 1026 (4th Cir.1987), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–03 (4th Cir.) ( *Piccinin* ), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Furthermore, section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate. *See Burstein–Applebee*, 63 B.R. at 1020–21 (principals of debtor permanently enjoined from continuing state court action against creditors' committee); *In re Askew*, 61 B.R. 87, 89 (Bankr. S.D.Ohio 1986) (creditor permanently enjoined from continuing state court action regarding discharged debt). American, however, points to no case, and we are aware of none, in which

---

[1] In bankruptcy, a discharge is an involuntary release by operation of law of asserted and non-asserted claims by a creditor against an entity who has filed a petition under the Bankruptcy Code and who has abided by its rules. *In re Arrowmill Development Corp.*, 211 B.R. 497, 504 (Bankr. D.N.J. 1997). Upon confirmation of a plan, a Chapter 11 debtor receives a discharge of its debts which arose before confirmation. 11 U.S.C. § 1141(d)(1). Subsection § 524(e) limits the scope of the discharge. A "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity, for such debt." 11 U.S.C. § 524(e).

> a court permanently enjoined, past confirmation of a plan, a creditor from enforcing a state court judgment against a nondebtor guarantor of a contract liability. Deutsche argues, and the district court held, that its power under section 105(a) to order the relief sought by American ends at confirmation of the plan.

*American Hardwoods*, 885 F.2d at 624-25. The analysis in *American Hardwoods* focused on § 105 of the Bankruptcy Code, which the Court concluded "does not authorize relief inconsistent with more specific law." *Id.*, at 625, citing with approval *In re Golden Plan of California, Inc.*, 829 F.2d 705, 713 (9th Cir.1986); and *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The Court rejected the semantic distinction between a permanent injunction and a discharge and viewed a permanent injunction of actions against the debtor's guarantors as being contradictory to the specific provisions of § 524(e). The Court in *American Hardwoods* thus concluded the court had no power to issue the injunction sought by the debtor:

> As we succinctly explained in *Underhill v. Royal*, 769 F.2d 1426 (9th Cir.1985):
>
>> Generally, discharge of the principal debtor in bankruptcy will not discharge the liabilities of codebtors or guarantors.... [Section 524(e) ] of the 1978 Bankruptcy Reform Act was a reenactment of Section 16 of the 1898 Act which provided that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Act of July 1, 1898, ch. 541, § 16, 30 Stat. 550 (formerly codified at 11 U.S.C. § 34 (1976)).
>
>> In addition, the Bankruptcy Act of 1898, as amended, provided that a corporation's discharge in bankruptcy "shall not release its officers, the members of its board of directors or trustees or of other similar controlling bodies, or its stockholders or members, as such, from any liability under the laws of a State or of the United States." Act of June 22, 1938, ch. 575, § 4(b), 52 Stat. 845 (formerly codified at 11 U.S.C. § 22(b) (1976)). Thus, under the old Act, stockholders or directors could remain liable for substantive violations despite discharge of the corporate entity. 1A J. Moore COLLIER ON BANKRUPTCY ¶ 16.14, at 1551 (14th ed. 1978).

8

> *Id*. at 1432; *see also id*. ("The bankruptcy court 'has no power to discharge the liabilities of a bankrupt's guarantor.' "), *quoting Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982); *id*. (" 'The bankruptcy court can affect only the relationships of debtors and creditor. It has no power to affect the obligations of guarantors.' "), q*uoting R.I.D.C. Industrial Development Fund v. Snyder*, 539 F.2d 487, 490 n. 3 (5th Cir.1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). Section 524(e), therefore, limits the court's equitable power under section 105 to order the discharge of the liabilities of nondebtors[.]

*Id*. at 625-26. At that time, the Ninth Circuit reasoned, in dicta, that adoption of the rationale discussed in in *Menard–Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989), would not dictate a different result because the facts in *American Hardwoods* were distinguishable from the unusual facts found in *A.H. Robins*. *Id*. at 626. In so stating, the Ninth Circuit enumerated five factors which it considered critical to the *A.H. Robins* holding:

> (1) the reorganization plan, which included the injunction, was approved by over 94% of the claimants ..., (2) the plan provided for full payment of creditors' claims, ...; (3) the injunction affected only about 1.5% of the claimants, ...; (4) it was "essential" to the plan that claimants "either resort to the source of funds for them in the Plan ... or not be permitted to interfere with the reorganization and thus with all other creditors, ...; and (5) "the entire reorganization hing[ed] on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor."

*American Hardwoods*, 885 F.2d at 626.

Six years later, in *In re Lowenschuss*, 67 F.3d 1394, the Ninth Circuit again revisited the scope of § 524(e) and reiterated "that bankruptcy courts do not have the equitable power under § 105(a) to discharge the liabilities of nondebtors through chapter 11 plan confirmation, contrary to the provisions of § 524(e)." *Id*. at 1401-02. The Ninth Circuit clarified that in *American Hardwoods*, it "expressly declined to adopt the approach set forth in *In re A.H. Robins*[.]"

This Court is bound by, and does not dispute the legal precedent established in *Lowenschuss*, *American Hardwoods*, and *Underhill*, that liabilities of nondebtors cannot be discharged through a plan. Such legal precedent, however, is inapplicable here because, unlike in *Lowenschuss*, *American Hardwoods*, and *Underhill,* the exculpation clause in the Plan is not a broad sweeping provision that seeks to discharge or release nondebtors from any and all claims that belong to others.

The exculpation clause in the Plan before the Court is narrow in both scope and time, and applies only to an "act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, negotiation, or implementation of this Plan, the solicitation of acceptances of this Plan, the pursuit of Confirmation of this Plan, the Confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan[.]" Blixseth maintains in his Supplemental Memorandum filed November 7, 2011, that he "will have substantial claims against exculpated parties based on their willful and malicious prosecution of frivolous claims against him." Such claims are not barred by the exculpation clause because the exculpation clause, by its plain terms, does not protect any party, beyond a quasi-judicial immunity defense, "for acts or omissions which are the result of fraud, breach of fiduciary duties, gross negligence, or *willful misconduct*." The exculpation clause here is no broader than the clause examined in *In re Lighthouse Lodge, LLC*, (slip opinion) 2010 WL 4053984 (Bankr. N.D.Cal. 2010).

As noted earlier, the exculpation clause in the Plan does not implicate 11 U.S.C. § 524(e) and is not barred by Ninth Circuit Law. The exculpation clause is limited in both time and scope, and under the circumstances, is appropriate.

Blixseth next argues the Plan improperly provides for jurisdiction by this Court over the Estate Blixseth claims. Blixseth does not address such objection in his Supplemental Objection filed November 7, 2011, and thus, the Court deems said objection waived. The Court would note, however, that whether this Court has jurisdiction over the Estate Blixseth claims will be determined at the appropriate time and as the Trustee noted at the hearing, YCLT has already commenced its litigation against Blixseth on the Estate Blixseth claims in the United States District Court for the Central District of California. Given recent developments, it may be prudent for the Trustee to delete such provision from his Plan prior to confirmation so as to avoid any potential hassle such provision might cause in the future. *See In re BearingPoint, Inc.*, 453 B.R. 486 (Bankr. S.D.N.Y. 2011).

Blixseth also argues the Plan improperly assigns to YCLT, for purposes of collection, the Bankruptcy Estate's claims against Blixseth. In a prior motion filed August 12, 2011, the Trustee sought authorization to assign, for purposes of collection, certain claims of the Bankruptcy Estate to YCLT. Blixseth's counsel Philip J. Stillman was served with a copy of the Trustee's August 12, 2011, motion and did not file a timely response. After receiving no objections after notice, the Court entered an Order on August 30, 2011, granting the Trustee's motion to assign claims to YCLT. The Court will not, at this late date, grant Blixseth a second bite at the apple.

Blixseth also argues the Plan is not feasible because the claims of the estate against Blixseth are without merit. The Trustee's Plan is a liquidating plan, not a plan or reorganization. The Court agrees with the Trustee that "[d]istributions, if any, will be allocated according to specified priorities, and within priorities, on a pro rata basis, if, as, and when assets become available." No set of circumstances exist which would permit the Trustee to file a more feasible

11

Plan.

Finally, Blixseth takes issue with the Trustee's attempt, through the Plan, to treat YCLT's claim as valid, when the Trustee should have brought such a contested matter before the Court in accordance with F.R.B.P. 9014. In particular, Article II, paragraph 8(c) provides that "[t]he YCLT shall be deemed to have an Allowed Claim in Class 5 in the amount of $234,535,594.92[.]" The Trustee counters that 11 U.S.C. § 1123(b)(3)(A) specifically provides that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate[.]"

Blixseth's objection to Article II, paragraph 8(c) of the Plan raises a potentially troubling issue that causes the Court to pause and review the proprietary of what the Plan, and more particularly YCLT, is attempting to achieve through the confirmation process in this case. YCLT's Allowed Claim, as set forth in the Plan, corresponds with Proof of Claim No. 26 filed by YCLT on April 15, 2010, wherein YCLT asserts a total claim of $234,535,594.92. The attachments to the Proof of Claim show that the claim relates primarily to three Promissory Notes dated September 30, 2005; the first between Blixseth Group, Inc., now known as BLX Group, Inc.,[2] and Yellowstone Mountain Club, LLC in the original principal amount of $208,831,158.45, the second between Blixseth Group, Inc. and Yellowstone Mountain Club, LLC in the original

---

[2] Debtor, an Oregon sub-S corporation, was owned solely by Blixseth as President and CEO from 1999 to August 12, 2008, and did business under the name Blixseth Group, Inc. Blixseth and his spouse, Edra Blixseth ("Edra"), separated in December of 2006, and effective August 12, 2008, Edra and Blixseth agreed, pursuant to a Marital Settlement Agreement, that Edra would receive Blixseth Group, Inc. and the Yellowstone Club entities, which included Yellowstone Mountain Club, LLC and Yellowstone Development, LLC. On August 19, 2008, just days after obtaining control of Blixseth Group, Inc., Edra changed the name of Blixseth Group, Inc. to BLX Group, Inc.

12

principal amount of $7,800,000, and the third between Blixseth Group, Inc. and Yellowstone Development, LLC in the original principal amount of $55,798,796.68.  At that time, Debtor owned 82.6532 percent of the Class A stock in Yellowstone Mountain Club, LLC and Yellowstone Development, LLC.

Yellowstone Mountain Club, LLC and Yellowstone Development, LLC, along with related entities Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, have a consolidated Chapter 11 bankruptcy case pending before this Court.  In litigation originally involving Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, and now involving YCLT following confirmation of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC's Third Amended Joint Plan of Reorganization, this Court entered on August 16, 2010, a Memorandum of Decision that concluded the three Promissory Notes attached to YCLT's Proof of Claim No. 26 were a sham to disguise what were in fact distributions.  That decision was on appeal to the United States District Court of Montana.  The Honorable Sam E. Haddon entered an Order on October 11, 2011, concluding this Court's Amended Judgment of September 7, 2010, which related to the Court's August 16, 2010, Memorandum of Decision, was not a final judgment from which an appeal may be taken.  This Court's determination that the three Promissory Notes were nothing but a sham to disguise what in fact were distributions is not a final and binding decision.  Nevertheless, in the not too distant future, the Court intends to enter a final judgment from which an appeal may be taken.  Such final judgment will be based in part on the Court's finding in the August 16, 2010, Memorandum of Decision that the Promissory Notes were prepared in an effort

13

to disguise distributions.

Paragraph 8(c) of Article II of the Plan before the Court in this case seeks to treat the Promissory Notes as valid. If this Court were to confirm the Plan, it would be entering an order that in effect deems the Promissory Notes valid. Such decision would fly in the face of this Court's findings as expressed in the August 16, 2010, Memorandum of Decision entered in Adversary Proceeding 09-00014.

The Court is not willing, without more information or evidence, to enter an order in one case that is entirely antithetical to a decision entered in another case. Quoting *In re BearingPoint, Inc.*, 453 B.R. 486 (Bankr. S.D.N.Y. 2011), Blixseth correctly argues "[i]t would be manifestly improper for me to determine adjudicative facts on evidence from outside that record, or based on knowledge or perceptions developed in the course of the earlier chapter 11 case." In other words, it would be improper to grant or deny confirmation in this case based upon facts it learned through over two weeks of trial in Adversary Proceeding 09-00014. But as stated earlier, this Court is also not willing to enter decisions that come to the exact opposite conclusion on whether the three Promissory Notes at issue are valid.

The Trustee, as the Plan proponent, has the burden of proof with respect to confirmation. The Trustee must reconcile the decision he seeks in this case with the decision reached by this Court in Adversary Proceeding 09-00014. At this time, the Court finds the Trustee has not sustained his burden of proof with respect to paragraph 8(c) of Article II of the Plan. Accordingly, the Court will issue a separate order providing as follows:

IT IS ORDERED confirmation of the Trustee's Third Amended Plan of Liquidation shall be held in abeyance; and absent a consent to confirmation by Blixseth in the interim, an

additional hearing on approval of paragraph 8(c) of Article II of the Trustee's Third Amended Plan of Liquidation shall be held **Tuesday, December 20, 2011, at 10:00 a.m.**, or as soon thereafter as the parties can be heard, in the 5TH FLOOR COURTROOM, FEDERAL BUILDING, 316 NORTH 26TH, BILLINGS, MONTANA.

BY THE COURT

/s/ Ralph B. Kirscher

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana